UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

IN RE:     DMITRY LENIKMAN,                    Chapter 7
                                               Case No. 14-27596-mdm

            Debtor.

---

**MOTION OF M & D INVESTMENT CO. FOR RELIEF FROM AUTOMATIC STAY REGARDING PROPERTY LOCATED AT 9055 NORTH 51ST STREET, UNITS A & B, BROWN DEER, WISCONSIN**

---

M & D Investment Co. ("M & D") moves the Court for an order granting it relief from the automatic stay imposed by Section 362(a) of the Bankruptcy Code and alleges as follows:

1.      M & D is a Wisconsin partnership with a principal address at 560 Industrial Drive, Hartland, Wisconsin 53029.

2.      M & D owns commercial real estate commonly known as 9055 North 51st Street, Brown Deer, Wisconsin 53223.

3.      Units A and B of the property at 9055 North 51st Street, Brown Deer, Wisconsin ("Premises") are occupied by the Debtor for business and not homestead purposes, doing business as North Shore Group pursuant to a Lease dated May 1, 2013.

4.      The Debtor as tenant had defaulted under the Lease, and on the petition date a small claims eviction case was open, Milwaukee County Case No. 14SC15668.

Drafted by:
Daniel J. Habeck
Cramer, Multhauf & Hammes, LLP
1601 E. Racine Avenue, Suite 200
P.O. Box 558
Waukesha, WI 53187-0558
Phone: (262) 542-4278
Fax: (262) 542-4270
djh@cmhlaw.com

5.     A true and correct copy of the Summons and Complaint in that case, including the relevant Lease, are attached as Exhibit A.

6.     The Debtor has made no rent payments following the petition date.

7.     The trustee has not assumed the Lease and the time for assumption is past.

8.     M & D is denied adequate protection to which it is entitled based on the failure of the Debtor to past due pre-petition and post-petition rents.

9.     Further, relief from the automatic stay is appropriate as the Debtor has no equity in the Premises.

10.     Relief is further appropriate as the Debtor is not seeking reorganization but seeks Chapter 7 relief.

WHEREFORE, M & D Investment Co. moves the Court for an order terminating the automatic stay to permit it to evict the Debtor in Milwaukee County Circuit Court and pursue any and all other relief arising from the Premises or the Lease thereof.

Dated this 17th day of September, 2014.

CRAMER, MULTHAUF & HAMMES, LLP
Attorneys for M & D Investment Co.

BY:   _/s/ Daniel J. Habeck_
          Daniel J. Habeck, SBN: 01030959

2

**STATE OF WISCONSIN, CIRCUIT COURT, <u>MILWAUKEE</u> COUNTY**

For Official Use

Plaintiff: (Name [first, middle, last], Address, City, State, Zip)
*Demandante: (Nombre [primero, segundo, apellido], domicilio, ciudad, estado, código postal)*

<u>M & D INVESTMENT CO.</u>
<u>560 Industrial Drive</u>
<u>Hartland, WI 53029</u>

`14SC015668`

☐ See attached for additional plaintiffs
*Ver adjunto para otros demandantes*

☐ Amended *Enmendado*

### Summons and Complaint
### Small Claims
*Citaciones y Demandas*
*Reclamos de menor cuantía*

-vs—-*contra*-

To: Defendant(s) : (Name [first, middle, last], Address, City, State, Zip)
*Para: Demandado(s): (Nombre [primero, segundo, apellido], domicilio, ciudad, estado, código postal)*

<u>NORTH SHORE GROUP</u>
<u>c/o Dmitry Lenikman</u>
<u>86867 W. Freistadt Road</u>
<u>Thiensville, WI 53097</u>

Case No.
*Número de caso*

☐ Claim for money ($10,000 or less)   31001
*Reclamo de dinero ($10.000 o menos)*
☐ Return of property (replevin)   31003
*Devolución de propiedad (Reivindicación de cosas muebles)*
☒ Eviction   31004
*Desalojo*
☐ Eviction due to foreclosure   31002
*Desalojo por ejecución de hipoteca*
☐ Arbitration award   31006
*Sentencia de arbitraje*
☐ Return of earnest money   31008
*Devolución de seña*
☐ Tort/Personal injury ($5,000 or less) 31010
*Agravio/Daños Corporales ($5.000 o menos)*

☒ See attached for additional defendants
*Ver adjunto para otros demandados*

If you require reasonable accommodations due to a disability to participate in the court process, please call _____ at least 10 working days prior to the scheduled court date.  Please note that the court does not provide transportation.
*Si necesita ajustes razonables debido a una discapacidad para poder participar en el procedimiento judicial, sírvase llamar como mínimo 10 días hábiles antes de la fecha judicial programada. Por favor tome en cuenta que el tribunal no proporciona transporte.*

---

This form does not replace the need for an interpreter, any colloquies mandated by law, or the responsibility of court and counsel to ensure that persons with limited English proficiency fully comprehend their rights and obligations.
*Este documento no sustituye el uso de un intérprete, ni los coloquios judiciales exigidos por la ley. Tampoco sustituye la responsabilidad del tribunal y los abogados de asegurarse de que las personas cuya comprensión del idioma inglés sea limitada entiendan por completo sus derechos y obligaciones.*

---

## SUMMONS *CITACIÓN*

**To the Defendant(s):** *Para el/los demandado/s:*
You are being sued as described below. If you wish to dispute this matter:
*Lo están demandando según lo indicado abajo. Si desea disputar este asunto:*
☐ You must appear at the time and place stated.
  *Debe comparecer a la hora y en el lugar establecidos.*
  **AND/OR** (Clerk will circle one)
  *Y/O (El Actuario del juzgado  marcará una)*
☐ You must file a written answer and provide a copy to the plaintiff or plaintiff's attorney on or before the date and time stated.
  *Debe presentar una respuesta por escrito y proporcionar una copia al demandante o al abogado del demandante en la fecha y hora establecidas o con anterioridad a ellas.*
If you do not appear or answer, the plaintiff may win this case and a judgment entered for what the plaintiff is asking.
*Si no comparece ni responde, el demandante puede ganar esta causa y se puede dictar un fallo a favor de lo que el demandante esté solicitando.*

**When to Appear/File an Answer**
*Fecha para comparecer/ presentar una respuesta*
Date
*Fecha* JUL 1 0 2014     Time 2:00 p.m.
                         *Hora*

**Place to Appear/File an Answer**
*Lugar para comparecer/presentar una respuesta*

Milwaukee County Courthouse
901 N. 9th Street, Room 400
Milwaukee, WI 53233

FILED AND
AUTHENTICATED

SC     JUN 1 2 2014     SC

Clerk/Attorney Signature *Firma del Actuario de Juzgado/Abogado*

Date Summons issued     Date Summons Mailed
*Fecha de emisión de la citación*   *Fecha en la que se envió la citación*

JOHN BARRETT
Clerk of Circuit Court

SC-500, 08/11 Summons and Complaint - Small Claims
Spanish Translated Date: 11/11     Case 14-27596-mdm   Doc 16   Filed 09/17/14   Page 3 of 24   Chapter 799, Wisconsin Statutes
This form shall not be modified. It may be supplemented with additional material.

# COMPLAINT *DEMANDA*

**Plaintiff's Demand:**    *Demanda del demandante:*

The plaintiff states the following claim against the defendant(s):

*El demandante realiza la siguiente demanda contra el/los demandado/s:*

    1. Plaintiff demands judgment for:  *(Check as appropriate) El demandante exige un fallo por: (Marcar lo que corresponda)*

☐ Claim for Money $ _____      ☐ Tort/Personal injury $ _____

    *Reclamo de dinero*                     *Agravio/Daños Corporales*

☐ Return of Earnest Money    ☒ Eviction    ☐ Eviction due to foreclosure

    *Devolución de seña*          *Desalojo*        *Desalojo por ejecución de hipoteca*

☐ Return of property (replevin) *(Describe property in 2 below.) Devolución de propiedad (Reivindicación de cosas muebles)( Describa los bienes en el punto 2 abajo)*

(Not to include Wis. Stats. 425.205 actions to recover collateral.)

*(Excluyendo las acciones en virtud de las leyes de Wisconsin 425.205 para la recuperación de bienes dados en garantía.)*

☐ Confirmation, vacation, modification or correction of arbitration award.

    *Confirmación, anulación, modificación o corrección de sentencia arbitral.*

    Plus interest, costs, attorney fees, if any, and such other relief as the court deems proper.

    *Más intereses, costos, honorarios legales, de existir, y toda otra asistencia que el tribunal considere adecuada.*

    2. Brief statement of dates and facts: *(If this is an eviction action and you are seeking money damages, you must also state that claim on this form.)*

    *Breve declaración de fechas y hechos: (Si es una acción de desalojo y busca el resarcimiento de dinero, debe también indicar ese reclamo en este formulario)*

    (SEE ATTACHED COMPLAINT) _____

    _____

☐ **See attached for additional information**. Provide copy of attachments for court and defendant(s).

*Ver adjunto para información adicional. Proporcione copia de adjunto para el tribunal y el/los demandado/s.*

**Verification:** Under oath, I state that the above complaint is true, except as those matters stated upon information and belief, and as to those matters, I believe them to be true.

*Verificación: Declaro bajo juramento que la demanda precedente es verdadera, excepto con respecto a aquellos asuntos basados en información y creencias, y en cuanto a esos asuntos, creo que son verdaderos.*

         I am: ☐ plaintiff.    ☒ attorney for the plaintiff.

         *Soy:*     *demandante.*    *abogado del demandante.*

| | | | |
|---|---|---|---|
| State of   Wisconsin<br>*Estado de*<br>County of   Waukesha<br>*Condado de*<br>Subscribed and sworn to before me on 06/12/2014<br>*Suscrito y jurado ante mí*<br><br>Notary Public/Court Official<br>*Notario Público, Funcionario del tribunal*<br>Jean Walker<br>Name Printed or Typed<br>*Nombre escrito en letra de molde o a máquina.*<br><br><br>My commission/term expires: 11/20/2016<br>*Mi comisión/mandato vence:* | Signature of Plaintiff or Attorney<br>*Firma del demandante o abogado*<br><br>Plaintiff's/Attorney's Telephone Number<br>*Teléfono del demandante/abogado*<br><br>262-542-4278 | Date *Fecha*<br>06/12/2014<br><br>Law Firm and Address<br>*Bufete de abogados y domicilio*<br>Peter J. Plaushines<br>Cramer, Multhauf & Hammes, LLP<br>PO Box 558<br>Waukesha, WI  53187 | Attorney's State Bar Number<br>*Número de inscripción del abogado en el Colegio de Abogados*<br>1004302 |

SC-500, 08/11 Summons and Complaint – Small Claims<br>
Spanish Translated Date: 11/11

Chapter 799, Wisconsin Statutes

Case 14-27596-nmb   Doc 16   Filed 09/17/14   Page 4 of 24<br>
This form shall not be modified. It may be supplemented with additional material.<br>
Page 2 of 2

**Additional Defendant**:

Dmitry Lenikman
86867 W. Freistadt Road
Thiensville, WI 53097

**STATE OF WISCONSIN**      **CIRCUIT COURT**      **MILWAUKEE COUNTY**
**SMALL CLAIMS DIVISION**

M & D INVESTMENT CO.
560 Industrial Drive
Hartland, WI 53029

       Plaintiff,

v.

NORTH SHORE GROUP
c/o Dmitry Lenikman
86867 W. Freistadt Road
Thiensville, WI 53097

and

DMITRY LENIKMAN
86867 W. Freistadt Road
Thiensville, WI 53097

       Defendants.

Case No. _____
Case Code: 31004
Classification: Eviction

---

## EVICTION COMPLAINT

---

NOW COMES the above-named Plaintiff, M & D Investment Co. ("M & D") by its attorneys, Cramer, Multhauf & Hammes, LLP, and as and for a Complaint against the above-named Defendants, alleges and shows to the Court as follows:

1. The Plaintiff, M & D Investment Co., is a Wisconsin partnership with its business address c/o Jerome Gebhard, 560 Industrial Drive, Hartland, WI 53029.

2. The Defendant, North Shore Group is a d/b/a for Dmitry Lenikman and is a sole proprietorship with a principal place of business located at 9055 North 51st Street, Units A and B, Brown Deer, WI 53223.

FILED AND
AUTHENTICATED

SC  JUN 1 2 2014  SC

JOHN BARRETT
Clerk of Circuit Court

3.     Defendant Dmitry Lenikman is, upon information and belief, an adult resident of the State of Wisconsin residing at 86867 W. Freistadt Road, Thiensville, WI 53097.

4.     M & D leased North Shore Group approximately 4800 square feet of space at 9055 North 51st Street, Units A and B, Brown Deer, WI 53223 by Lease dated May 1, 2013 (Exhibit A, attached.)

5.     North Shore Group is in default of the Lease for nonpayment of rent, late fees and interest, along with other charges and costs due pursuant to the Lease. Per Section 31 of the Lease, the total unpaid rent is immediately due and payable.

6.     North Shore Group was given an opportunity to cure on or about December 21, 2013 (Exhibit B, attached.)

7.     North Shore Group did not pay the amounts due, has not cured, but remains in possession of the premises.

8.     That pursuant to the Lease, the tenancy and North Shore Group's rights thereunder are terminated, and M & D is entitled to judicial confirmation thereof.

9.     That pursuant to the terms of the Lease, North Shore Group is further liable for M & D's reasonable attorneys' fees and expenses (Section 20) incurred in enforcing the Lease.

10.     That Dmitry Lenikman is liable to M & D for all amounts due under the Lease pursuant to a personal guaranty (attached and made part of the Complaint).

WHEREFORE, M & D Investment Co. demands Judgment as follows:

1.     For a Judgment of Eviction removing Defendants from the leased premises and restoring same.

2

2.     For Judgment against the Defendants for all amounts due under the Lease or Wisconsin Law.

3.     For a Writ of Assistance and such other and further relief as may be just and equitable.

Dated this _/ /_ day of June, 2014.

CRAMER, MULTHAUF & HAMMES, LLP,
Attorneys for Plaintiff

BY: _____
Peter J. Plaushines
(State Bar No. 1004302)

CRAMER, MULTHAUF & HAMMES, LLP
1601 East Racine Avenue • Suite 200
P.O. Box 558
Waukesha, WI 53187
(262)-542-4278
pjp@cmhlaw.com

# LEASE

THIS LEASE is made this 1st day of May, 2013, by and between M & D INVESTMENT CO. hereinafter called "Landlord," and NORTH SHORE GROUP, a sole proprietorship, hereinafter called "Tenant."

    1. <u>Description of Premises</u>. In consideration of the covenants and agreements hereinafter set forth, Landlord does hereby lease, demise and let unto the Tenant the following described premises ("Leased Premises") in the Village of Brown Deer, Milwaukee County, State of Wisconsin, commonly known as 9055 N. 51st Street, Units A and B, Brown Deer, Wisconsin, consisting of land and a building approximately 4800 square feet in size, more particularly described on "Exhibit A" attached hereto and made a part of this Lease.

    2. <u>Term</u>. The term of this Lease (with respect to Unit B) shall commence on the 1st day of May, 2013, and shall run for a period of three (3) years two (2) months, terminating on June 30, 2016. The term of this Lease (with respect to Unit A) shall commence on the 1st day of July, 2013, and shall run for a period of three (3) years, terminating on June 30, 2016, and Tenant shall not occupy Unit A until July 1, 2013. This Lease shall automatically extend for additional one (1) year periods commencing July 1, 2016, unless either party gives to the other written notice of termination one hundred twenty (120) days prior to the end of the lease term.

    3. <u>Rentals</u>. Tenant agrees to pay and the Landlord agrees to accept as rental for the Leased Premises, the following rentals:

        a. <u>Base Rental</u>. There shall be no base rent for the first two (2) months (May and June, 2013, with respect to Unit B,) but Tenant shall be responsible for the other financial obligations of this Lease, including the obligations in Section 4 (taxes and assessments,) Section 8 (utilities,) and Section 9 (repairs). For the next thirty-six (36) months of the Lease (to-wit: July 1, 2013 to June 30, 2016,) the Tenant shall pay to Landlord a base rental of Twenty-four Thousand Dollars ($24,000) payable in equal monthly installments of Two Thousand Dollars ($2,000) each without abatement, deduction, claim, offset, and without prior notice or demand on the first day of each and every month in advance. The total rent due under this Lease is Seventy-two Thousand Dollars ($72,000.)

        b. <u>Increases in Rent</u>. As of July 1, 2016, and annually thereafter, the base annual rental shall be adjusted based on any increase in the amount of the increase in the Consumer Price Index ("CPI") for All Urban Consumers, All Items, for Midwest area (1982-84 = 100). The computation shall be made by multiplying the base annual rent by a fraction, the numerator of which shall be the index figure 6 months prior to the month in which the adjustment commences and the denominator of which shall be the index figure for the month prior to the month in which the Lease commences. In the event that the Bureau of Labor Statistics shall cease to publish the index, then a similar index by any other branch or department of the United States shall be used. The result of this computation shall be added to the annual base rental and commencing on the 1st day of July, 2016, the adjusted base rental shall be paid, plus the increase as herein determined. This adjustment shall be made annually during the



balance of the term of this Lease and any extensions or renewals thereto. However, in no event shall the base annual rental ever decrease during the term or any extension term of this Lease.

4. <u>Taxes and Assessments</u>. The Tenant shall pay Tenant's prorata share of all general real estate taxes levied, assessed, or that become a lien against the Leased Premises during the term of the Lease. If after the date hereof, any new special assessments are assessed, levied, or become a lien against the Leased Premises for public improvements, the Tenant shall be obligated to pay such portion of the total assessment as the unexpired term of the Lease from the date of the assessment bears to the full term of the Lease. In the year in which the Lease terminates, the Tenant shall pay any real estate tax for the months of such year prior to the termination of the Lease, based upon a proration of the general real estate taxes for the year of termination, if known, otherwise on the general real estate taxes for the year immediately prior to the year in which the Lease terminates. The Tenant shall promptly pay all taxes and assessments levied on or against Tenant's property on said premises, and all license, permit, occupational and inspection fees assessed or charged against said premises or either party to this Lease by reason of Tenant's use or occupancy of said Leased Premises, and the Tenant shall hold the Landlord free and harmless from any loss, damage or expense arising out of or by reason of said charges. Tenant shall pay Tenant's prorata share within ten (10) days of receipt of invoice by Landlord.

5. <u>Use of Premises</u>. Tenant agrees that it will not use or permit the Leased Premises, or any part thereof, to be used for any illegal, disorderly or improper purposes, or in violation of any laws, ordinances or regulations and agrees that the said premises shall be used only for the operation of Tenant's business as well as related activities. No part of the Leased Premises shall be occupied or used by any person for any purpose or in any manner so as to increase the insurance risk or prevent the obtaining of insurance or so that, in accordance with any requirement of law or any public authority, Landlord shall be obliged to make any addition or alteration to the premises. No auction, fire or bankruptcy sales shall be conducted upon the Leased Premises without the prior written consent of the Landlord.

In furtherance and not in limitation of the provisions of this Section 5, Tenant, at Tenant's expense shall comply with all laws, rules, orders, ordinances, directions, regulations and requirements of federal, state, county and municipal authorities pertaining to all zoning and other land use matters and all environmental matters, including but not limited to the use, storage, disposal and dispensing of hazardous materials, gasoline and other petroleum base products from the Leased Premises. Tenant shall indemnify, defend and hold Landlord harmless from and against any and all claims, judgments, damages, penalties, fines, costs, liability or losses (including without limitation, all consequential damages and sums paid in settlement of claims, attorney fees, consultant fees and expert fees) arising out of Tenant's violation of any environmental laws, rules, orders, regulations or any other such matters pertaining to the use, storage, disposal and dispensing of hazardous materials, gasoline and other petroleum base products subsequent to the effective date of this Lease. Such indemnity shall survive the expiration or earlier termination of the term. At any time, whether before or after termination of the term, if Tenant has failed to comply with laws, rules, orders, ordinances, directions, regulations and requirements of state, federal, county or municipal authorities relating to any hazardous materials at the Leased Premises, Landlord may, at its option, require Tenant to remove all hazardous materials, including any gasoline, stored by Tenant at the Leased Premises, which removal shall be in conformance with all applicable governmental requirements and

standards. As used herein, the term "hazardous materials" means any hazardous or toxic substance, material or waste, including but not limited to, those substances, materials and wastes listed in the United States Department of Transportation Hazardous Materials Table (49 CFR 172.101) or by the Environmental Protection Agency as hazardous substances, materials and wastes that are or become regulated under any applicable local, state or federal law.

      6. Alterations. Tenant shall not have the right to make any structural changes or structural improvements except that Tenant shall have the right to make interior improvements upon obtaining Landlord's prior written approval thereto. The only other exception is that Tenant may remove the opening (approximately 12' x 12') between Unit A and Unit B, which is presently sealed by concrete block, provided that Tenant replaces said block upon vacating the premises and restores the opening to its identical condition. Tenant shall furnish Landlord with a copy of plans and specifications therefor and Landlord agrees not to unreasonably withhold his consent, provided that such changes shall not weaken or in any way impair or change the character of the building thereby. All alterations and improvements by Tenant hereunder shall be performed in a good workmanlike manner, at the sole cost and expense of Tenant, and in compliance with the requirements of this Lease and of all laws, ordinances and regulations applicable thereto. Said work shall be completed free and clear of all liens and encumbrances. Tenant covenants that all alterations, rebuilding, replacements, changes, additions and improvements made by Tenant shall be and immediately become part of the realty and the sole and absolute property of the Landlord, except that all movable trade fixtures installed by the Tenant shall be and remain the property of the Tenant as provided in Section 7 hereof.

      7. Trade Fixtures. The Tenant may, during the term of this Lease, install such fixtures, equipment and appliances as may be reasonably necessary for the conduct of its business upon the Leased Premises. Such fixtures, equipment and appliances shall be and remain the property of the Tenant except as hereinafter provided. The Tenant agrees that it will not create, incur or impose or suffer or cause others to create, incur or impose any lien or obligation against the Leased Premises or the Landlord by reason of the installation herein authorized. Tenant is responsible for obtaining all governmental occupancy permits, at its cost, for all heating, ventilation and exhaust systems required for Tenant's use. The Tenant agrees to hold the Landlord harmless of and from any and all claims and demands of third persons in any manner relating to or arising out of such installation.

      The aforesaid fixtures, equipment and appliances may be affixed to the Leased Premises and the Tenant may remove the same at will, and shall remove the same at the termination of this Lease if so required by the Landlord. All damages incurred to the Leased Premises as a result of any affixation or removal hereunder shall be promptly repaired by and at the sole cost and expense of the Tenant. Any fixtures, equipment or appliances referred to herein not removed as herein permitted or required shall, at the option of the Landlord, be deemed abandoned by the Tenant, to be disposed of by the Landlord as its sole property.

      Tenant shall repair at its expense, at the termination of this Lease, any damage to the Leased Premises resulting from the driving of nails, marks or other fasteners in any of the walls, ceilings or floors of the Leased Premises.

If at any time hereafter the Tenant is in default under any of the covenants, conditions and agreements of this Lease, the Landlord shall at its sole option have a lien for an amount necessary to cure such default consonant with and comparable to a lien under the Wisconsin Uniform Commercial Code on such fixtures, equipment and appliances, and the Tenant shall not sell, encumber or remove said fixtures, equipment or appliances until the default shall have been determined, resolved or satisfied.

8. Utilities. Tenant is directly responsible for all charges for electricity, gas, telephone and other utilities supplied to the Leased Premises. The Tenant shall pay Tenant's prorata share of any sewer and water charges which any municipality or public or private utility may levy for furnishing sewer and water services.

9. Repairs.

a. Leased Premises. Without limitation, Tenant shall keep in good order, condition and repair, structural parts of the Leased Premises, roof and subflooring, as well as any HVAC. Tenant shall, at all times, at its expense, clean, keep and repair in good, safe, and sanitary order, condition and repair every part of the Leased Premises which obligation includes, without limitation, all plumbing and sewerage facilities, fixtures, interior walls, floors, ceilings, interior and exterior windows, doors, entrances, plate glass, electrical facilities and equipment, including all lighting, fixtures, lamps, fans and any exhaust equipment and systems and any automatic fire extinguisher equipment within the Leased Premises, electrical motors and all other appliances and equipment of every kind and nature located in or about the Leased Premises.

b. Outside Area of Leased Premises. Tenant shall be financially responsible for Tenant's prorata share of the outside area, lawns and parking lot, including without limitation, the cost of any policies of insurance covering the outside area, cost of labor, materials, supplies and services used or consumed in operating, maintaining, managing, snowplowing, repairing or replacing outside area, including maintaining and repairing landscaping, sprinkler systems, concrete walkways and paved parking areas, maintaining and repairing property signs and site lighting and all utilities provided to outside area. Tenant shall pay Tenant's prorated share within 10 days of the date of invoice.

10. Landlord Not Liable for Damage. The Landlord shall not be liable for any loss or damage to persons or to the property of the Tenant or its employees, agents, or invitees occasioned by or resulting from defects in electrical wiring, plumbing, gas, water, heating, sewer or other pipes, leaking, running or the stoppage or overflow of any boiler, tank, washstand, tub, toilet or waste pipe in or upon said premises, nor for any damage occasioned by water, snow, ice or anything being upon or coming through the walls, roof or windows of the Leased Premises or by breakage of glass in the windows or doors.

11. Fire Insurance. The Tenant shall keep the Leased Premises insured against loss by fire (with extended coverage), in an amount equal to not less than 80 percent (but not more than 100 percent) of the full insurable value thereof. All insurance policies which the Tenant has in force to meet this requirement shall name the Landlord as the party insured. The Tenant shall furnish to the Landlord certificates or other evidence indicating that such insurance is in effect.

12. <u>Indemnification and Liability Insurance</u>. Tenant agrees to indemnify and save the Landlord harmless against and from any and all claims, damages, costs and expenses including reasonable attorney's fees arising from the conduct or management of the business conducted by the Tenant on the Leased Premises. It is further understood and agreed that the Landlord shall not be liable, and the Tenant waives all claims for damage to person or property sustained by the Tenant, its employees, agents, invitees or customers, resulting from the condition of the Leased Premises, or any equipment or appurtenances. In case any action or proceeding is brought against Landlord by reason of the aforesaid causes, Tenant, upon receiving prompt written notice from Landlord, agrees to defend such action or proceedings. The Tenant agrees to carry and pay the premiums for public liability insurance insuring itself and the Landlord against injury to property, person or loss of life arising out of the use and occupancy of the Leased Premises, with limits of at least One Million Dollars ($1,000,000.00) per occurrence for any number of persons injured or killed in any one accident, and shall furnish to Landlord as may be requested from time to time, a certificate of said insurance. Such policies of insurance shall not be canceled, discontinued or altered without ten (10) days written notice to the Landlord.

13. <u>Waiver of Subrogation</u>. Whenever (a) any loss, cost, damage or expense resulting from any personal injury, death, fire, theft, vandalism, malicious mischief, mysterious disappearance or any other accident or peril is incurred by any party to this lease in connection with the Leased Premises, or any building on the Leased Premises, or any part or contents thereof, and (b) such party is then covered in whole or in part by insurance with respect to such loss, cost, damage or expense, then the party so insured hereby releases the other party from any liability it may have on account of such loss, cost, damage or expense to the extent of any amount recovered by reason of such insurance and waives any right of subrogation which might otherwise exist in or accrue to any person on account thereof, provided that such release of liability and waiver of the right of subrogation shall not be operative in any case where the effect thereof is to invalidate such insurance coverage (or increase the cost thereof, unless the other party reimburses the insured for any cost increase). Landlord and Tenant each agree to use their best efforts to have an appropriate waiver of subrogation provision included in all such policies.

14. <u>Assignment and Subletting</u>. The Tenant shall not assign, mortgage nor sell this Lease or sublet the Leased Premises or any portion thereof, nor permit any licensee or concessioner to operate in or use the Leased Premises without the written consent of the Landlord first had and obtained. The Landlord may accept rent from any person in possession without releasing the Tenant from this covenant. The Landlord's right to assign this Lease is and shall remain absolute and unqualified.

15. <u>Subordination</u>. At the Landlord's option, this Lease shall be and is subordinated to any existing mortgages covering said premises, and any extensions or renewals thereof, or to any new mortgages which may be placed thereon from time to time; provided, however, anything to the contrary herein notwithstanding, every such mortgage shall recognize the validity of this Lease in the event of a foreclosure of the Landlord's interest as long as Tenant shall not be in default under any of the terms of this Lease. The Tenant shall execute whatever instruments may be required to effect such subordination.

16. <u>Destruction of the Premises</u>. If the Leased Premises be totally destroyed by fire or other casualty, this Lease and the term hereby created may be terminated at the Landlord's written option delivered to the Tenant within sixty (60) days after such destruction. If the Leased Premises be totally destroyed by fire or other casualty, and if the Landlord shall not within sixty (60) days after such total destruction, elect to terminate this Lease, the Landlord shall, at its own cost and expense, commence to rebuild, restore and/or replace the said premises as soon as practical, and in any event within three (3) months of such destruction. Such work shall be prosecuted with due diligence. The rental herein reserved to the Landlord shall abate for the period between the date of such total destruction and the date the Leased Premises shall be rebuilt, restored, replaced and absolute and complete legal possession thereof shall again be delivered to the Tenant so that the Tenant shall be able to use and operate the same and have the full and beneficial enjoyment thereof. In the event that the work of repair, reconstruction, restoration and replacement of the Leased Premises is not commenced within three (3) months after such total destruction by fire or other cause is not prosecuted with reasonable diligence, the Tenant may, at its option, cancel and terminate this Lease by notice in writing to the Landlord. If the Leased Premises be partially damaged or destroyed by fire or other cause, Landlord shall within thirty (30) days after adjustment of insurance or in any event within forty-five (45) days after loss, commence to repair and/or reconstruct the Leased Premises at Landlord's own cost and expense. The Leased Premises shall be placed as nearly as possible in the same condition as they were in before such partial destruction or damage. During the period of such repairing and reconstruction and until the Leased Premises are again fully available for the satisfactory occupancy of the Tenant, the Tenant shall pay such portion of the rental as is in proportion to the space occupied and the facilities enjoyed. In the event the work of repair, restoration, or reconstruction is not started within thirty (30) days after adjustment of insurance for such partial damage by fire or other cause, or within forty-five (45) days after such loss (whichever date is earlier), or in the event that the work of repair, reconstruction or restoration is not substantially completed within three (3) months after such partial damage by fire or other cause, the Tenant may, at its option, cancel and terminate this Lease by notice in writing to the Landlord; provided, however, that delay caused by war, strikes, governmental action, acts of God, or any major cause beyond the control of the parties hereto shall not be included within such three (3) month period for repair, reconstruction or restoration. As used herein, "partial destruction" shall mean such destruction as will require the expenditure to rebuild, repair and/or replace the damaged Leased Premises of a sum not exceeding 50 percent of the building's sound value immediately prior to its damage. As used herein, "total destruction" shall mean such destruction as will require the expenditure to rebuild, repair and/or replace the damaged Leased Premises of a sum in excess of 50 percent of the building's sound value immediately prior to its damage.

17. <u>Eminent Domain</u>. In the event the Leased Premises shall be condemned or taken by eminent domain by any authority having the right of eminent domain, or if purchased by such authority in lieu of condemnation of said premises, then the term of this Lease shall cease and terminate as of the date title vests in the condemnor and all rentals shall be paid up to that date and the Tenant shall have no claim against the owner for the value of any unexpired term of this Lease.

18. <u>Quiet Possession</u>. The Landlord hereby warrants, covenants and agrees that the Tenant, on paying rent and performing the covenants and conditions of this Lease, may have and shall quietly have, hold and enjoy the Leased Premises during the term hereof.

19. Rent Default. It is mutually agreed that, in the event that Tenant shall default in the payment of rent when due, the Landlord may forward written notice of such default by certified mail, addressed to the Tenant as hereinafter set forth, and failure on the part of the Tenant to cure such default within ten (10) days after the date of mailing said notice shall, at the option of the Landlord, work a forfeiture of this Lease. In case the Tenant so continues the default of any rental payment due after notice, the Tenant shall not be released of any liability for rent hereunder by reason of Landlord's repossession of the Leased Premises or by Landlord's taking any other legal proceedings available to it upon default, nor shall a forfeiture of this release the Tenant from continuing liability for payment of rent as provided. Acceptance by the Landlord of any rent payment or payments in any amount less than the full amount due shall not constitute a waiver by the Landlord of his right to the full amount of the rent due according to the terms of this Lease.

Landlord and Tenant further agree that, in the event Tenant at any time during the term hereof is in default in the payment of rent, Landlord shall have the right to charge interest at the rate of 12 percent per annum, commencing on the eleventh (11th) day after rent is due and continuing until rent payments are current. Tenant hereby agrees to pay said interest upon notification by Landlord.

20. Other Defaults. It is mutually agreed that in the event Tenant shall default in any of the covenants, conditions and agreements of this Lease other than the payment of rent, the Landlord may forward written notice of such default by certified mail addressed to the Tenant as herein set forth, and the Tenant agrees that it will cure such default within twenty (20) days after the date of mailing of such notice (or in the event such default is of such character as to require more than twenty (20) days to cure, the Tenant will use due diligence to cure such default). And, in the event that the Tenant shall fail to cure such default as herein set forth, the Landlord may cure such default and the costs and expenses thereof shall be deemed to be additional rent to be paid by the Tenant on the next day when the monthly rental shall be due and collectible. If, however, after due notice to the Tenant of an opportunity to cure the same, the Tenant shall refuse to cure or make good any such default, the Landlord may, at its option, terminate this Lease. Failure to give notice of any default shall not be deemed to be a waiver thereof nor continuation thereof.

Tenant agrees that in the event of the employment of an attorney by Landlord for the collection of any amount due under this Lease, or for the institution of any suit for possession of the Leased Premises, or for advice or service incident to the breach of any of the conditions of this Lease by Tenant, or because Landlord is made a party to any litigation commenced by or against the Tenant, the Tenant will pay all costs, expenditures, and reasonable attorney's fees incurred by or imposed on the Landlord. Such costs, expenditures, and legal fees shall be considered as so much additional rent and will be due on the next rent day after they have been incurred by Landlord.

21. Bankruptcy. Neither this Lease, nor any interest therein, nor any estate thereby created shall pass to any trustee or receiver or assignee for the benefit of creditors or otherwise by operation of law. In the event the estate created hereby shall be taken in execution or by other process of law, or if the Tenant shall be adjudicated insolvent or bankrupt pursuant to the provisions of any estate or federal insolvency or bankruptcy act, or if a receiver or trustee of the

property of the Tenant shall be appointed by reason of the Tenant's insolvency or inability to pay its debts, or if any assignment shall be made of the Tenant's property for the benefit of creditors, then and in any such events, the Landlord may, at its option, in addition to the remedies provided herein, terminate this Lease and all rights of the Tenant herein, by giving to the Tenant notice in writing of the election of the Landlord so to terminate. Tenant shall not cause or give cause for the institution of legal proceedings seeking to have the Tenant adjudicated bankrupt, or reorganized or rearranged under bankruptcy laws of the United States and shall not cause or give cause for the appointment of a trustee or a receiver of the Tenant's assets, and shall not make an assignment for the benefit of creditors or become or be adjudicated insolvent. The allowance of any petition under the bankruptcy law, or the appointment of a trustee or a receiver of the Tenant or its assets shall be conclusive evidence that the Tenant caused or gave cause therefor, unless such allowance of the petition, or the appointment of a trustee or receiver is vacated within thirty (30) days after such allowance or appointment.

22. Continued Liability for Rent. If the Tenant shall abandon or vacate the Leased Premises before the end of the term of this Lease or shall suffer any installments of rent or other payment to be in arrears, or shall neglect or fail to keep and perform any other provisions or terms of this Lease on the part of the Tenant to be kept and performed, the Landlord after notice as hereinabove provided, may enter said premises and remove any signs of said Tenant therefrom and relet the same as the Landlord may see fit, without thereby voiding or terminating this Lease. If sufficient sums shall not be realized from such reletting, after payment of the expenses of such reletting to equal the monthly rental to be paid by the Tenant under the provisions of this Lease, plus the Landlord's costs for remodeling such premises for such reletting purposes, plus reasonable fees therefor, then the Tenant agrees to pay said deficiency during each month during the entire term upon demand; it being expressly agreed that no surrender of the Leased Premises and no action taken on the part of the Landlord to repossess the premises shall release or relieve the Tenant of its continued liability for the payment of rent, unless such release shall be evidenced by written consent to the Tenant from the Landlord.

23. Cumulative Remedies. All rights and remedies of the Landlord herein enumerated shall be cumulative and one shall exclude any other right to remedies allowed by law, and such rights and remedies may be exercised and enforced concurrently and whenever and as often as the occasion therefor arises, and failure on the part of the Landlord to enforce any of its remedies in connection with any default shall not be deemed a waiver of such default nor a consent to any continuation thereof.

24. Right to Enter and View. The Landlord or its representatives may enter and view the premises hereby leased for the purpose of examining the same, provided that such entering and viewing shall be done at a time mutually agreeable to the parties and in a manner so as not to unduly interfere with the conduct of the Tenant's business; and the Landlord may, at any time within ninety (90) days prior to the expiration of the lease term, place upon the Leased Premises a sign or signs announcing the fact that said premises are available for rental.

25. Notices. Whenever in this Lease it shall be required or permitted that notice be given by either party hereto to the other, such notice shall be forwarded by certified mail to the last written, designated address of the Landlord and the Tenant.

26. Security Deposit. Tenant shall pay to Landlord upon the execution of this Lease the sum of Two Thousand Dollars ($2,000) as security for performance of the terms hereof by Tenant, which shall be returned to Tenant within thirty (30) days following the expiration of the term of this Lease if Tenant has discharged its obligation to Landlord in full.

27. Waiver of Jury Trial and Counterclaim. Landlord and Tenant agree that, to the extent permitted by law, each shall, and by this provision does, waive trial by jury in any action, proceeding, or counterclaim brought by either of them against the other on any matters whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the Premises, or claim or injury or damage. In the event Landlord commences any proceedings for nonpayment of Base Rent, Additional Rent, or other charges or sums due from Tenant under this Lease, Tenant will not interpose any counterclaim of whatever nature or description in any such proceedings.

28. Attorney Fees. In the event that any action is filed in relation to this Lease, the unsuccessful party in the action shall pay to the successful party, in addition to all of the sums that either party may be called upon to pay, a reasonable sum for the successful party's costs and attorney's fees.

29. Net Lease. This Lease is intended to be and shall be a "net, net, net" lease and the rent and all other sums payable hereunder by Tenant (all of which shall be deemed to be additional rent) shall be paid without notice or demand and without setoff, abatement, suspension, deduction, or defense. As more particularly set forth herein, Tenant shall pay all taxes, insurance premiums, maintenance, repair and replacement costs and expenses, utility charges and expenses, and all other costs and expenses, of whatever nature, relating in any way to the Leased Premises and/or the operation thereof during the term of this Lease. This Lease shall continue in full force and effect and the obligations of Tenant hereunder shall not be released, discharged, diminished, or otherwise affected by reason of any restriction on or prevention of or interference with the use of the Leased Premises, or any part or parts thereof, except as otherwise specifically provided in this Lease. It is expressly understood and agreed that, except as specifically stated herein to the contrary, Landlord shall have no responsibility or obligation, whatsoever, with respect to the Leased Premises or the condition or use thereof during the term of this Lease and shall be absolutely, without limitation, exculpated from any and all such responsibilities and/or obligations, all such responsibilities and obligations being those of Tenant.

30. Marginal Headings. The marginal headings used throughout this Lease are for convenience in reference only, and the words contained therein will in no way be held to explain, modify, amplify or add to the interpretation, construction or meaning of the provisions of this Lease.

31. Acceleration. Upon default, Landlord may exercise the option of declaring the entire balance of rent hereunder immediately due and payable without further notice or demand.

32. No Agency. The relationship of Landlord and Tenant created by this Lease shall not constitute or be construed as a partnership, principal-agent relationship, joint venture or other cooperative enterprise between Landlord and Tenant. In no event shall Tenant be deemed

an agent of Landlord. Tenant shall have no authority to enter into any contract on behalf of Landlord or bind or obligate Landlord to any contract or obligation, express or implied.

IN WITNESS WHEREOF, the Landlord and Tenant have duly executed this Lease and affixed their respective seals hereto upon the day and year first above written.

LANDLORD:
M & D INVESTMENT CO.

By _____

TENANT:
NORTH SHORE GROUP

By _____

## GUARANTY

In consideration of the leasing of the Leased Premises to Tenant, and for other valuable consideration, receipt of which is hereby acknowledged, the undersigned hereby guarantees to Landlord, and its successors and assigns, the prompt payment by Tenant of the rents reserved in the Lease, and the performance by Tenant of all of the provisions and covenants contained in said Lease for and during the original term of said Lease and any renewal or renewals or extensions thereof; and if any default shall be made by Tenant, the undersigned shall pay to Landlord, its successors or assigns, such sum or sums of money as will be sufficient to make up any such deficiency, and it shall satisfy the provisions and covenants by Tenant to be performed. The undersigned does further covenant and agree to pay all of Landlord's expenses, including reasonable attorney fees, incurred in enforcing this guaranty.

Dated this _1st_ day of _MAY_, 2013.

_____
Dmitry Lenikman

EXHIBIT A



Certified Mail – Return Receipt Requested

## NOTICE OF DEFAULT/QUIT OR PAY

TO:    North Shore Group                    Dmitry Lenikman, Guarantor
           9055 N. 51st Street, Units A & B     1575 W. Liebau Road
           Brown Deer, WI 53223                Mequon, WI 53092

RE:    Lease Between M & D Investment Co. and North Shore Group

Description of Premises: 9055 N. 51st Street, Units A & B, Brown Deer, WI 53223.

Per Section 19 of the Lease dated May 1, 2013 by and between M & D Investment Co. and North Shore Group, you are hereby notified that you are in default by not paying rent due December 1, 2013.

Failure on your part to cure such default within ten (10) days shall, at the option of the Landlord, work a forfeiture of this Lease. In case you continue the default of rental payments, you shall not be released of any liability by reason of Landlord's repossession.

This Notice terminates your tenancy and requires you to remove from the premises unless you cure the default.

Dated this _/8_ day of December, 2013.

M & D INVESTMENT CO.

By _[signature]_

STATE OF WISCONSIN CIRCUIT COURT-SMALL CLAIMS BRANCH MILWAUKEE COUNTY

<table>
<tr><td>

M & D INVESTMENT CO.          ,
                  Plaintiff,

VS.

 NORTH SHORE GROUP, et al          ,
                 Defendants.

</td><td>

**AFFIDAVIT OF SERVICE**
**OF NOTICE**
**TERMINATING TENANCY**

Case No. _____

</td></tr>
</table>

STATE OF WISCONSIN ) 
MILWAUKEE COUNTY ) SS
The undersigned, being first sworn, on oath deposes and says:

1. He/She is an adult resident of the State of Wisconsin and makes this affidavit upon personal knowledge.

2. ~~Then he/she~~ *Plaintiff* served the notice terminating tenancy (check appropriate box)

   ☐ 5 day notice                 ☐ 14 day notice

   ☐ 28 day notice               ☑ _10_ day notice

   filed in the above-entitled action upon the following person

     Dmitry Lenikman

3. In the following manner (check appropriate box) on the __18th__ day of
   __December__, 20_13_ :

   ☐ a) Copy given to tenant personally.

   ☐ b) Copy given to member of tenant's family (14 or older), who was informed of the contents of the notice.

   ☐ c) Copy given to a person occupying or in charge of premises and copy mailed to tenant by regular and/or certified mail.

   ☐ d) Tenant not found after reasonable diligence – Copy posted o premises and mailed to tenant by regular and /or certified mail.

   Attempts to personally deliver made at the following dates & times 1) _____

   ☐ 2) _____ 3) _____ .

   ☑ e) Copy mailed to tenant by certified and/or registered mail. *per commercial Lease provisions.*
   *See signed Return Receipt.*

   Dated: __June 12, 2014__                   _____

Subscribed and sworn to before me on          ~~Landlord or~~ Agent of Landlord

this __12th__ day of __June__, 20_14_ .

_____
Notary Public State of Wisconsin

My Commission expires __11/20/2016__

4963 R2

Certified Mail – Return Receipt Requested

## NOTICE OF DEFAULT/QUIT OR PAY

TO:   North Shore Group                       Dmitry Lenikman, Guarantor
         9055 N. 51st Street, Units A & B      1575 W. Liebau Road
         Brown Deer, WI 53223                Mequon, WI 53092

RE:   Lease Between M & D Investment Co. and North Shore Group

Description of Premises: 9055 N. 51st Street, Units A & B, Brown Deer, WI 53223.

Per Section 19 of the Lease dated May 1, 2013 by and between M & D Investment Co. and North Shore Group, you are hereby notified that you are in default by not paying rent due December 1, 2013.

Failure on your part to cure such default within ten (10) days shall, at the option of the Landlord, work a forfeiture of this Lease. In case you continue the default of rental payments, you shall not be released of any liability by reason of Landlord's repossession.

This Notice terminates your tenancy and requires you to remove from the premises unless you cure the default.

Dated this ___/8___ day of December, 2013.

M & D INVESTMENT CO.

By _____

**U.S. Postal Service**
**CERTIFIED MAIL₂ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage)*
For delivery information visit our website at www.

| | | |
|---|---|---|
| Postage | $ | $0.46 |
| Certified Fee | | $3.10 |
| Return Receipt Fee (Endorsement Required) | | $2.55 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.11 |

Sent To _DMITRY LENIKMAI_
Street, Apt. No.; or PO Box No. _1575 W. LIEBAU_
City, State, ZIP+4 _MEQUON, WI 5309_

7010 1870 0002 0170 6439

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete Item 4 If Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

_DMITRY LENIKMAN_
_1575 W. LIEBAU RD_
_MEQUON, WI 53092_

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee
B. Received by ( Printed Name )   C. Date of Delivery 12/20/13
D. Is delivery address different from Item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☒ Yes

**EXHIBIT**
**8**

7010 1870 0002 0170 6439

102595-02-M-18

| | |
|---|---|
| Plaintiff / Petitioner<br><br>M & D INVESTMENT CO. _____<br><br>-vs-<br><br>Defendant / Respondent: NORTH SHORE GROUP, c/o DMITRY LENIKMAN, et al _____ | **Affidavit of<br>Nonmilitary Service**<br><br>Case No. _____ |

I, the undersigned, being first duly sworn on oath, say that:

1. I am the ☐ plaintiff/petitioner or ☒ plaintiff's/petitioner's attorney in this case.

2. This affidavit is made for the purpose of obtaining a default judgment against the above named defendant/respondent.

☐ 3. I believe the defendant/respondent is not on active military duty at this time because (choose one):

    ☐ I know the defendant/respondent personally and s/he has never given any indication that s/he is in service with the United States military or National Guard.

    ☐ I contacted the defendant/respondent, who informed me on (Date) _____ that s/he is not on active duty at this time.

    ☐ I see the defendant/respondent regularly and therefore believe s/he is not on active duty at this time.

    ☐ Other personal knowledge: _____

☐ 4. I obtained a certificate from the United States Department of Defense website showing that the defendant/respondent ☐ is ☐ is not on active duty status. This certificate is attached.

☒ 5. I have attempted to determine military status but do not have sufficient information. I have no reason to believe s/he is on active duty at this time. Describe efforts made: attempted to obtain SS information - no results

▶ _____
            Plaintiff/Petitioner (Do not sign until you are under oath)

State of Wisconsin
County of Waukesha
Subscribed and sworn to before me on 06/12/2014

_____ (signature)
    Notary Public/Court Official

Jean Walker
    Name Printed or Typed

My commission/term expires: 11/20/2016

_____
    Name Printed or Typed of Plaintiff/Petitioner

▶ _____
       Plaintiff's/Petitioner's Attorney

Peter J. Plaushines
    Name Printed or Typed of Plaintiff's/Petitioner's Attorney

06/12/2014
    Date